IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LENORA M. ELLISON,

                      Plaintiff,                Case No. 3:06 CV 899

-vs-

                                                <u>MEMORANDUM  OPINION</u>

DAIMLERCHRYSLER CORP.,

                      Defendant.

KATZ, J.

This matter is before the Court on the motion for summary judgment of Defendant DaimlerChrysler, LLC (Doc. 28). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Plaintiff Lenora M. Ellison began work at Defendant's Toledo Machining Plant on November 9, 1998. She worked in varying capacities until she was laid off on September 17, 2004. She was reinstated to employment at the plant on February 8, 2005.

When Plaintiff applied for employment with Defendant on April 1, 1998, she signed an agreement that read as follows:

> In consideration of Chrysler's review of my application, I agree that any claim or lawsuit arising out of my employment with, or my application for employment with Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY. . . .

Ellison Dep. at 27-28, Ex. B.

Ellison claims that on August 22, 2002, another DaimlerChysler employee, Henry Wilkins, approached her from behind while she was leaning against her workstation. He allegedly reached his right arm over her right shoulder and pinned her to the workstation, telling her to stay in that position and not to move.[1] Plaintiff then elbowed Wilkins off of her back and told him not to do that ever again. On her way to the bathroom, Plaintiff told a coworker about the incident. The next morning, Plaintiff reported the incident to the Union representative, Mark Bowen. Bowen contacted the union steward, Steve Bond, who accompanied Plaintiff to the Human Resources Generalist, Sarah Bento. After Plaintiff spoke privately with Bento, the two went to discuss the incident with Labor Supervisor Patrick Peyton, who conducted an investigation into the incident. Peyton discovered varying accounts of the incident, but instructed Wilkins to limit his contact with Plaintiff.

Plaintiff alleges no wrong-doing prior to this incident. Wilkins' job was as a plant runner, which required him to drive a golf cart around the plant for various purposes. Plaintiff alleges that Wilkins harassed her on four additional occasions by driving his cart past her workstation. Plaintiff claims that Wilkins drove by her department on October 14, 2002 and October 23, 2002, staring and smiling at her. Plaintiff reported these incidents and they were again investigated. Peyton and Wilkins' supervisor told Wilkins to stay away from Plaintiff. Plaintiff also alleges that on January 3, 2003, Wilkins drove by her workplace multiple times, smiling, staring, and waving at her. Finally, on September 25, 2003, Wilkins allegedly drove by on his cart and stopped and stared at Plaintiff for several minutes. These last two incidents were again investigated and found

---

[1] Some statements from Plaintiff also include an allegation that Wilkins rubbed his genital area against Plaintiff's back and buttocks.

2

to be disputed by witnesses and possibly exaggerated in terms of the distance between Plaintiff and the path by which Wilkins drove.

Between January 31, 2003 and May, 2003, Plaintiff was off work for medical reasons. She filed a workers' compensation claim in February, 2003 for a work-related shoulder injury that had occurred on March 22, 2002. She returned to work with certain medical restrictions that included no bending more than 25% of the shift, no forceful or repetitive grasping, no repetitive motions, no repetitive gripping with the left hand, and no lifting over ten pounds with the left hand.

In September, 2004, Plaintiff was transferred to another assembly line due to a manpower adjustment at the plant that affected the department assignments of 89 other employees, including four that were transferred out of Plaintiff's former department. The new department shuffled Plaintiff around, seeking a job that met her medical restrictions. In accordance with the CBA, which reserved jobs for workers with higher seniority than Plaintiff, the supervisors could not find Plaintiff a job with her restrictions. Plaintiff filed the requisite forms to be laid off, which allowed her to receive combined payments that totaled 95% of her normal pay. Plaintiff did not file a grievance with the Union over her layoff. She was reinstated at the plant on February 8, 2005 without medical restrictions.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), which issued a right-to-sue letter on May 13, 2003. Plaintiff filed another complaint and the EEOC filed another right-to-sue letter on April 7, 2006. This claim now before this Court was filed on April 14, 2006.

**II. Summary judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

Defendant moves for summary judgment on several grounds, arguing first that Plaintiff's claims are time barred by the employment contract and the right-to-sue letters, and in the alternative that Plaintiff cannot establish a claim for hostile work environment, discrimination, or retaliation under state or federal law.

**A. Time bars to bringing suit**

Defendant argues that the 6-month limitation period provided for in the employment application and the 90-day limitation period of the EEOC's right-to-sue letters have rendered Plaintiff's suit untimely, depriving this Court of jurisdiction to hear Plaintiff's claims.

### 1. EEOC 90-day limitation

Under Title VII, a claimant who receives a right-to-sue letter from the EEOC must file suit within ninety (90) days of the notification.  Here, there are two right-to-sue letters on record.  One is dated May 13, 2003 and the other April 7, 2006.  Plaintiff relies on the latter in bringing this suit.  Defendant argues that Plaintiff may not rely on the latter when the former was issued and the limitations period passed without suit being filed.  Defendant alleges, albeit poorly, that the first letter was based on a different charge.

In *Brown v. Mead*, 646 F.2d 1163, 1164 (6th Cir. 1981), the Sixth Circuit held that "a plaintiff in a Title VII action, who received two successive, facially valid right-to-sue notices from the [EEOC], but who did not commence a suit in a district court within ninety days of receipt of the first notice, is precluded from proceeding under the second notice."  The Circuit reached that conclusion even though the first-issued right-to-sue letter later turned out to be in error and was followed by the second letter with an admission by the EEOC to that effect.

> Were we to accept appellant's proposition, it would become necessary in every case involving a potential administrative inconsistency for the trial court to investigate the EEOC action underlying the notice of right to sue. Thus, even if the notice were facially valid, as was the first notice issued to appellant Brown, a defendant could compel inquiry into the action of the agency. Furthermore, if suit were not brought under the first notice, a plaintiff could theoretically wait an indefinite time before obtaining a valid notice of right to sue and then could commence an action against the surprised employer.  These problems illustrate the importance of the rigid statutory framework within which discrimination claims proceed to the courts and demonstrate the wisdom of the Ninth Circuit's reluctance to make subjective inquiry into EEOC administrative practices.

*Id.* at 1166 (footnote omitted).  *See also Caudill v. American Motors Corp.*, 1984 U.S. App. LEXIS 14130 (6th Cir. 1984) ("[I]f the EEOC issues two right-to-sue letters to the same person, the first letter is the one which commences the statutory period for filing court action . . . [unless]

6

the EEOC subsequently informs the prospective plaintiff within the statutory period that it is reconsidering its earlier determination.").

Here, Plaintiff admits having received the first right-to-sue notice of May 13, 2003, but insists that the charge referred to in that letter was different from the charge referred to in the letter of April 7, 2006. The main underlying incident in this case is alleged to have occurred on August 22, 2002. Three of the four "drive-by" incidents, as the parties refer to them, occurred prior to May, 2003, the latest of those being January 3, 2003. The charge letter was apparently received by the Ohio Civil Rights Commission on February 6, 2003. *See* Ellison Dep., Ex. DD. Plaintiff does not allege that the drive-by incidents and the August 22, 2002 incident were not part of the 2003 charge letter or right-to-sue letter.

This Court sees no basis on which to distinguish the matter before it from those before the Sixth Circuit in *Brown* and *Caudill*. The allegations in Plaintiff's first-filed charge letter to the EEOC, like the February 6, 2003 letter to the OCRC, included descriptions of the same incidents underlying this lawsuit, with the negligible exception of one "drive-by." *See* Ellison Dep. at 198-204 and Ex. Z, AA, BB, CC, DD. Plaintiff does not dispute this similarity. Rather than relying on any substantive difference between the two charges, Plaintiff relies on the fact that the two right-to-sue letters bear different charge numbers. The fact that they bear different charge numbers, alone, cannot be interpreted to mean that they bear different charges, especially in light of the similarity in Plaintiff's two charge letters. Plaintiff cannot rely on the right-to-sue letter of April 7, 2006, in light of her failure to timely file suit on the basis of the right-to-sue letter of May 13, 2003.

Therefore, Plaintiff's Title VII claims for gender discrimination and sexual harassment, and the corresponding state law claims[2], are time-barred for failure to timely bring suit within 90 days of the original EEOC right-to-sue letter.

### 2. Employment application six-month limitation

As discussed above, the employment application signed by Ellison in 1998 provided a contractual limitations period of six months, despite the possibility that a statutory limitations period might provide longer, after the date of the underlying incidents, in which to bring a claim against the employer relating to the incidents.

The parties disagree as to whether such clauses are enforceable in this Circuit. If the clause is enforceable, Plaintiff's claims are time-barred because the date she filed this lawsuit (April 14, 2006) is longer than six months after the last alleged incident of harassment (September 25, 2003) and the date of the allegedly retaliatory layoff (September 17, 2004).

In *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 355, 360 (6th Cir. 2004), the Sixth Circuit upheld the application of similar language in an employment application to bar the plaintiff's Michigan law tort and gender discrimination claims and federal claims of Title VII and race discrimination. Plaintiff disagrees that the *Thurman* decision applied to Title VII claims, such as the claims before this Court. Plaintiff relies on *Lewis v. Harper Hosp.*, 241 F. Supp. 2d

---

[2] Discrimination actions brought under state law are to be analyzed using the Title VII approach used under federal law. *See* Ohio Rev.Code § 4112; *Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981). *See also Genaro v. Central Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (Ohio 1999); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981); *Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609-10, 575 N.E.2d 1164 (1991).

769, 772 (E.D. Mich. 2002), which reasoned that if the court upheld "the six month limitation of action clause as to [a] Title VII claim, the EEOC's period of exclusive jurisdiction would have the effect of abrogating [a p]laintiff's ability to bring a Title VII suit."

Defendant apparently concedes that *Thurman* did not apply to Title VII claims. However, a close reading of the procedural details of *Thurman* reveal the following: "On June 1, 2000, the Thurmans filed a lawsuit in federal district court, naming DaimlerChrysler and Pittman as defendants, alleging violations of the Michigan Elliot Larsen Civil Rights Act, *Title VII*, 42 U.S.C. § 1981, and various state law tort claims." *Thurman*, 397 F.2d at 355 (emphasis added). "On December 15, 2000, the suit was dismissed by the district court due to the repeated failure of the Thurmans' counsel to appear and participate in court ordered conferences." *Id.* Instead of reinstating the case, "the Thurmans filed a second lawsuit in August 2001, the present suit before the [Sixth Circuit], in the Oakland County Circuit Court alleging *the same claims as the previous suit*." *Id.* (emphasis added). It was that case, which included all the claims previously asserted (that includes a Title VII discrimination claim), in which the Sixth Circuit "[affirmed] the district court's order granting DaimlerChrysler's motion for summary judgment on *all claims against DaimlerChrysler*." *Id*. at 360 (emphasis added). It is apparent, then, that the *Thurman* court applied its reasoning vis-a-vis the six-month contractual limitation period as a basis for dismissal to Title VII claims such as the ones before this Court. This Court makes this observation, not necessarily as a legal holding (because such a holding is not herein necessary to dispose of this case), but in order to address the dispute raised between the parties on the application of *Thurman* to Title VII claims. It is acknowledged that the *Thurman* court made this determination without

9

addressing the arguments adopted in *Lewis* about the interplay of EEOC jurisdiction and the six-month limitation, although *Thurman* was decided approximately two years after *Lewis*.

**B. Sexual harassment**

Even if Plaintiff's claims were not time-barred as discussed above, she cannot establish a case of sexual harassment.

To prove a claim of hostile work environment harassment, a plaintiff-employee must show that:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the [psychological] well-being of the plaintiff; and 5) the existence of respondeat superior liability.

*Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 183 (6th Cir. 1992). "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir. 2000) (citations omitted). In order to find a hostile work environment, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

> The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *See Williams*, 187 F.3d at 562. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether-taken together-the

10

>reported incidents make out such a case." *Id*. The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. *See id.* at 563. Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir.2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

*Id.*

Here, the first alleged incident of harassment was serious and physically threatening to Plaintiff. Defendant, however, apparently took whatever steps were necessary to prevent such occurrences from happening again, and in fact no such incident is alleged to have re-occurred. The ensuing four alleged "drive-by" incidents took place over approximately fourteen months, and the most serious of these incidents involved staring, smiling, and waving. None of these incidents was sexual or physically threatening or humiliating, and they did not unreasonably interfere with Plaintiff's work performance. They were not even "mere offensive utterances" – they were less than that, and they were not offensive. Neither were they "based on" Plaintiff's gender.

**C. Gender discrimination and retaliation**

Additionally, even if Plaintiff's claims were not time-barred as discussed above, she cannot establish a case of gender discrimination.

It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful under Ohio law "[f]or any employer, because of the ... sex ... of any person ... to discharge without just cause ... or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of

employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown.[3]

The employee carries the initial burden of establishing a prima facie case of job status discrimination in employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An employee establishes a prima facie case of discrimination by presenting evidence which, when viewed in the light most favorable to her, would permit a reasonable jury to find that she was denied advancement opportunities because of her sex. *Rose v. National Cash Register Corp.*, 703 F.2d 225, 227 (6th Cir. 1983).

She can meet this burden by presenting either direct or circumstantial evidence of discrimination. Direct evidence is found, for instance, where an employer's policy is discriminatory on its face, *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or where a corporate decision-maker expressly states a desire to remove employees in the protected group, *see LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993). In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even had it not been motivated by impermissible discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality opinion); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

---

[3] See footnote 2.

Where no direct evidence of discrimination exists, an employee can establish her prima facie case by indirect or circumstantial evidence. In circumstantial evidence cases, the burden of persuasion remains at all times with the employee. *Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315-16 (6th Cir. 1989). The plaintiff must show that (1) she is a member of the protected class; (2) she was denied opportunities or experienced an adverse employment action; (3) she was otherwise qualified for the position; and (4) other individuals outside the protected class received more favorable treatment. *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 (6th Cir. 1990); *Gagné*, 881 F.2d at 313. Where the plaintiff presents only circumstantial evidence of discrimination, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the less favorable treatment. *See McDonnell Douglas*, 411 U.S. at 802. Once the employer has met its burden, the burden shifts back to the employee to show that the employer's stated reason for the less favorable treatment is pretextual. *Id.* at 804.

Plaintiff also asserts a claim of retaliatory discharge. When there is no direct evidence showing that an employer terminated an employee specifically for engaging in protected activity, the Court analyzes a retaliation claim under a framework mirroring that of employment discrimination claims based on circumstantial evidence, as discussed above. First, the Court must determine whether the employee has made out a prima facie case by showing that: (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316, 328 (Ohio Ct. App. 2002). If the plaintiff meets that burden, the Court must determine whether the employer has articulated a legitimate, non-discriminatory reason for

13

firing him. *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 697 N.E.2d 1080, 1083 (1997).

In both discrimination and retaliation cases, where the defendant sets forth, through the introduction of admissible evidence, that the actions were taken for a legitimate nondiscriminatory reason, it becomes the plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination. To establish pretext, a plaintiff may meet his or her burden by showing that the employer's proffered reason for adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Id.*; *Manzer*, 29 F.3d at 1084. Though the burden of production shifts back and forth between employer and employee under this framework, the employee at all times bears the burden of proving the employer acted with retaliatory intent. *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E.2d 137, 140 (Ohio Ct. App.1999).

Here, the allegedly adverse employment action was Plaintiff's September, 2004 layoff. Assuming Plaintiff can establish a prima facie case of discrimination and retaliation, she cannot show that Defendant's advanced legitimate non-discriminatory reason for the layoff was pretextual. Defendant argues that Plaintiff was laid off, along with three other employees, because supervisors could not find work that fell within prescribed medical restrictions. The Court notes initially that the temporal proximity between Plaintiff's protected activity (filing for worker's compensation and complaining of sexual harassment to the OCRC and EEOC, both in February, 2003, the last "drive-by" incident having occurred in January, 2003) and the layoff in September, 2004, was approximately one and a half years, a time period too long to give rise to a presumption

of causation. The time period between the August, 2002 incident and the layoff was even longer. *See Terry v. Memphis Hous. Auth.*, 422 F. Supp. 2d 917, 923-24 (W.D. Tenn. 2006) ("In the light most favorable to Plaintiff, almost one and one-half years transpired between the single incidence of harassment and the earliest alleged retaliatory act. Thus, there can be no inference of a causal connection based on temporal proximity in this case."). *See also Sanchez v. Caldera*, 36 Fed.Appx. 844, 846 (6th Cir. 2002) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir.2000)) (a proximity of time of less than six months is generally required to establish a prima facie case of retaliation); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (no causal connection based on temporal proximity where there was more than two months between protected activity and adverse employment action); *Cooper v. North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (four month time period between the protected activity and adverse employment action was insufficient to support an inference of retaliation).

Additionally, Plaintiff cannot show that Defendant's position that work could not be located within Plaintiff's medical restrictions was not based in fact, was insufficient justification for a layoff with the equivalent of 95% pay, or did not actually motivate Defendant's layoffs. Plaintiff only argues that, in spite of her medical restrictions, Plaintiff would have been able to perform "whatever work she was offered." Pl.'s Br., Doc. 52 at 21. This Court rejects that position; an employer is not under an obligation to put an employee to work beyond the employee's medical restrictions because the employee believes he or she can perform the work anyway, especially when, practically speaking, the alternative was a temporary layoff with the equivalent of 95% pay.

**IV. Conclusion**

For the reasons stated herein, Defendant's motion for summary judgment (Doc. 28) is hereby granted. Case dismissed.

IT IS SO ORDERED.

                                               s/ *David A. Katz*
                                              DAVID A. KATZ
                                              U. S. DISTRICT JUDGE